CARMELLA CIOCCA, PROSECUTOR-APPELLANT, v. THE NATIONAL SUGAR REFINING COMPANY OF NEW JER-SEY, DEFENDANT-RESPONDENT.

Argued October 23, 1939—Decided January 25, 1940.

*L.*

For the appellant, *Isadore & Nathan Rabinowitz.*

For the respondent, *John J. Breslin, Jr.,* and *McCarter & English* (*Ward J. Herbert,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. The widow of the deceased employe appeals from the judgment of the Supreme Court affirming the judgment of the Pleas, which in turn reversed the judgment of the bureau in her favor.

The question we are called upon to decide is whether the Supreme Court, in adopting the factual and legal conclusions of the Pleas, invoked and applied the applicable rule of law when, as here, it held that the death of the employe—appellant's husband—conceded to be from heat prostration suffered while at his work, was not the result of an accident arising out of his employment.

The proofs in the bureau in support of the widow's claim that her deceased husband suffered a compensable accident, because his death arose out of his employment, disclose, substantially, the following:

Respondent, as its name indicates, is engaged in the sugar refining business. Part of its plant consists of a dock built over the Hudson river, at Edgewater, New Jersey. The size of the dock, variously estimated, may safely be said to be, at least, four hundred feet long, one hundred feet wide and sixty feet high. It is of "wood construction, wooden trusses, wooden roof and wooden rafters * * *." One side is covered with "corrugated metal" and the other side with "transite boards, a fireproof insulated material." The roof consists of "tar and paper covered with slag or pebbles." The

dock has many doors and windows. It, however, requires the use of many large electric lamps to supply light during the day time.

To this dock came vessels, as did one on July 10th, 1937, loaded with raw sugar in bags weighing between three hundred and three hundred and forty pounds. As these bags of sugar are transported from the vessel to the dock a certain quantity of the sugar drops out of the bags and accumulates both on the platform of the trucks used and on the floor of the dock.

The work of Salvatore Ciocca (appellant's husband) consisted chiefly of sweeping up the sugar accumulated, as aforesaid, so that it could be salvaged, as it was, by placing it in buckets provided for that purpose; he also spliced rope slings used in hoisting the bags, he shoveled sugar and did other work from time to time as the occasion demanded. His working hours were from eight o'clock in the morning until five o'clock in the afternoon. He was a healthy and steady man; he worked regularly for respondent for about fifteen years.

July 10th, 1937, was an abnormally hot day. There was a maximum temperature of ninety-five degrees Fahrenheit and a minimum of ninety-one degrees Fahrenheit and a mean temperature of eighty-eight degrees Fahrenheit. This was an increase of fifteen degrees above normal. Ciocca commenced his work as usual at eight o'clock in the morning. He swept the accumulations of the sugar from the trucks. These trucks were from one and one-half feet to four feet from the platform of the dock. Since he was only "a medium sized man" he had to lean over with his broom to reach the platform of the trucks. So he worked steadily with the exception of an hour for lunch, until four o'clock when he was taken sick; he appeared to be "tired." It is conceded that he was overcome by "heat prostration" and was immediately taken to the Englewood Hospital where, as it is further conceded, he died from "heat prostration" about six-thirty P. M., of the same day. He was sixty-three years old.

The medical expert for appellant, none was produced for respondent, testified, among other things, that heat prostra-

tion or exhaustion may result from being exposed to the heat regardless of the cause of the heat; that one stricken with heat prostration does not necessarily first have to be exposed to the heat rays of the sun; that one working under a temperature prevailing at the time Ciocca worked may suffer heat prostration; and that in his opinion "* * * the work that he [Ciocca] performed on that day [the day in question] was the competent and producing cause of heat prostration from which he was suffering and died."

On the other hand, the proofs in support of respondent's claim that Ciocca's death was not compensable because it was not the result of an accident arising out of his employment tended to show that the work he was doing was relatively light and easy; that it did not induce out of the ordinary strain or exertion on his part; that the place where he worked was in fact a few degrees cooler (exact temperature on dock was not shown) than it was outside the dock; that his employment did not subject him to a greater exposure than that to which persons generally in that locality were exposed; and that, therefore, his prostration and ensuing death did not arise out of his employment.

In this posture of the proofs the bureau concluded that the construction of the building, the dust and particles filling the area as a result of the sweeping, the abnormal temperature, all subjected deceased employe to a greater exposure than that to which persons generally in that locality were exposed. And in light of decedent's previous good health, his prostration just before the end of his day's work and his ensuing death, fully justified the assumption that "he would not have died at the time he did but for all the conditions surrounding his employment." The bureau, therefore, held that "decedent's death was due to an accident in the sense that it was unexpected, and it was not such a result as would naturally follow the employment, but grew out of it and decedent died because of it." Accordingly the widow was awarded compensation.

From the judgment based upon the award in the bureau, respondent appealed to the Bergen County Court of Common Pleas.

Notwithstanding the concessions that deceased employe

was overcome from heat prostration while at his work and died as the result thereof, and all other proofs heretofore stated, the Pleas reversed the bureau. In so doing it found as follows:

"* * * The place where he worked was a large, well ventilated warehouse, built over the Hudson river, the day was hot, but Ciocca was not exposed at any time to the direct rays of the sun. There is no evidence that the place where he worked was hotter than other places in the vicinity. In fact, all the evidence on this point indicates that it was cooler. Neither is there any evidence that his exposure to the heat of the day was greater than that suffered by the public generally, nor that he was exerting himself unduly or unusually, nor that he was doing heavy work or working longer than was usual. He was not exposed to any artificial heat. There is, to sum it up, no evidence that his employment in any way contributed to or caused his prostration by heat or his ensuing death.

"There being no evidence that in his employment the decedent was subjected to a greater risk than that to which persons in the locality generally were exposed, his dependents are not entitled to compensation. *Kauffeld* v. *Pfund*, 97 *N. J. L.* 335."

From the judgment based upon the finding in the Pleas, the widow appealed to the Supreme Court. That court adopted the findings, factually and legally, of the Pleas. 122 *N. J. L.* 165; 4 *Atl. Rep.* (*2d*) 397. It is the propriety of the judgment based upon that finding that is here challenged.

1. We think the challenge is meritorious. In our opinion, the judgment under review is based upon a misapprehension of the applicable rule of law determinative of the question as to when a compensable accident can properly be said to have arisen out of the employment.

Concededly, unusual strain, effort, or exertion on the part of the employe in his employment has unquestionably frequently formed the basis for the determination by our courts that the employe has suffered a compensable accident. Typical cases are *Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; *affirmed*, 115 *N. J. L.* 500; 180 *Atl.*

*Rep.* 832; *Rother* v. *Merchants Refrigerating Co.,* 122 *N. J. L.* 347; 6 *Atl. Rep.* (2d) 404; *affirmed,* 123 *N. J. L.* 262; 8 *Atl. Rep.* (2d) 571. And, so, too, it must be conceded, the fact that the employment subjected the employe in his work to a greater exposure than that to which persons generally in that locality were exposed has also frequently formed the basis for our courts holding that the employe had suffered a compensable accident. Typical cases are *Kauffeld* v. *P. F. Pfund & Son,* 97 *N. J. L.* 335; 116 *Atl. Rep.* 487; *Richter* v. *DuPont de Nemours Co.,* 118 *N. J. L.* 404; 193 *Atl. Rep.* 194; *affirmed,* 119 *N. J. L.* 427; 197 *Atl. Rep.* 376. The aforesaid adjudications, however, mark no departure from what we conceive to be the applicable rule of law. For, in each case where compensation was allowed, a compensable accident was proved. We need hardly labor the point that simply because an employe does not in his employment exercise out of the ordinary effort, strain or exertion, or is not subjected to greater exposure than that to which other persons generally in that locality are exposed, it does not necessarily follow that the employe cannot otherwise sustain a compensable accident.

A compensable accident arises out of the employment when the proofs show that (1) the employment was one of the contributing causes without which the accident would not have happened and (2) that the accident was one of the contributing causes without which the injury or death would not have resulted. *Furferi* v. *Pennsyvlania Railroad Co.,* 117 *N. J. L.* 508, 515; 189 *Atl. Rep.* 126. A compensable accident arises out of the employment when the proofs show a causal connection between the employment and the injury or death. In the words of the Chief Justice, for this court, in the case of *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512, 520; 6 *Atl. Rep.* (2d) 396, "* * * the requirement that the injury or death arises by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, *i. e.,* the injury or death is related to or effected by the employment, that is to say, if but for the employment it would not have occurred." *Cf. Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409; *Douglass* v. *Riggs Disler & Co.,* 120 *N. J. L.*

583; 1 *Atl. Rep.* (*2d*) 207; *affirmed,* 122 *N. J. L.* 379; 5 *Atl. Rep.* (*2d*) 873. In other words, the proofs must show that the employment contributed to the injury or death.

2. It is urged that since both the Pleas and the Supreme Court found as a fact, on the evidence adduced, that there was no causal connection between the employment and the prostration, such a finding should not be reconsidered by us; that it is binding upon us. This is not so. True, we do not disturb factual conclusions based upon competent proofs in support of conclusions so reached. *Berlinger* v. *Medal Silk Co.,* 12 *N. J. Mis. R.* 301; 171 *Atl. Rep.* 678; *affirmed,* 113 *N. J. L.* 476; 174 *Atl. Rep.* 558. But it is equally true that we unhesitatingly reverse where there is no competent evidence to support a fact conclusion. *Cirillo* v. *United Engineers and Constructors, Inc.,* 121 *N. J. L.* 511, 512; 3 *Atl. Rep.* (*2d*) 596; *cf. Prino* v. *Austin Co.,* 121 *N. J. L.* 518, 521; 3 *Atl. Rep.* (*2d*) 621. And we reverse when the fact conclusion rests upon an "erroneous premise." *Bollinger* v. *Wagaraw Building Supply Co., supra.*

We are entirely satisfied that the result reached by the court below is based upon an erroneous principle of law. It therefore disregarded the pertinent plenary proofs here summarized, most of which were uncontradicted, supporting the claim of the widow that her husband's employment contributed to his death. He, therefore, died as the result of a compensable accident. His widow was properly awarded compensation in the bureau.

The judgment of the Supreme Court affirming the Pleas is reversed; the judgment of the bureau is affirmed, with costs.

*For affirmance*—HETFIELD, WELLS, JJ. 2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, BODINE, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 10.